CHICAGO, IOWA & DAKOTA RAILWAY COMPANY *et al.*,
Appellees, v. CEDAR RAPIDS, IOWA FALLS &
NORTHWESTERN RAILWAY COMPANY *et al.*, Appellants.

1. **Eminent Domain**: APPROPRIATION OF RIGHT OF WAY BY RAILROAD
COMPANY: EVIDENCE. Evidence that the defendant had built its line
of road for a distance of thirty-one miles in close proximity to a
right of way previously acquired by the plaintiff, at some places
running parallel to the latter, and for about three miles upon the
plaintiff's right of way, and crossing it five times within twenty-three
miles, two of which crossings were at such an acute angle as to be
impracticable as railway crossings, *held*, not to amount to such an
appropriation of the plaintiff's right of way by the defendant as
would entitle the plaintiff to recover in damages the value of its
entire right of way for thirty-one miles, under the rule of eminent
domain.

2. ———: ———: DAMAGES. The measure of damages that may be
recovered by the plaintiff in such case, *held*, to be the value of the
advantage gained by the defendant in making said crossings upon the
plaintiff's right of way, and the value of such portion of said right of
way as was actually appropriated.

*Appeal from Tama District Court.*—HON. L. G. KINNE,
Judge.

THURSDAY, OCTOBER 20, 1892.

THIS is an action in equity, and it involves the
rights and liabilities of the respective parties to a right
of way and grade of a railroad from Belmond, in
Wright county, to Forest City, in Winnebago county.
The plaintiffs claim that they were the owners of said
right of way and grade, and that the defendants wan-
tonly, maliciously, and piratically took possession of
said grade, and laid down a railroad track thereon,
which they are now operating. The action was com-
menced more than eight years ago. At that time the

defendants had not completed the road, and the plaintiffs demanded an injunction restraining the defendants from prosecuting the work. The injunction was not granted, and was denied on the final hearing. A judgment was rendered for the plaintiffs for seventy-nine thousand, six hundred and ninety-eight dollars and thirty-nine cents. The defendants appeal. The plaintiffs claim that the judgment should have been for some three hundred thousand dollars, and they also appeal.—*Reversed.*

*John Porter* and *C. E. Albrook*, for plaintiffs.

*S. K. Tracy*, for defendants.

ROTHROCK, J.—The case has once been in this court upon a question presented by a demurrer to the answer of the defendants. See 67 Iowa, 324. The opinion in that case contains quite a full statement of the facts of the case as shown by the original pleadings. That statement need not be repeated here. It is enough to say that the right of way and grade in question was at one time owned by the Iowa & Minnesota Railway Company, and that on the fourth day of June, 1881, it sold all its rights therein to the Forest City Southern Railway Company. The consideration agreed to be paid for the right of way and grade was five thousand dollars. The Forest City Southern Railway Company changed its name to that of the Chicago, Iowa & Dakota Railway Company, one of the plaintiffs herein. The five thousand dollars purchase money has never been paid. After default was made in the payment of the purchase money, the Iowa & Minnesota Railway Company made and delivered to one of the defendants a deed of conveyance to said property, and when this suit was commenced the defendants asserted the right to the entire right of way and grade. As will be seen by the opinion in the former appeal, the claim was that

the plaintiffs had forfeited whatever right they had to the property by failing to pay the purchase price at the time it was agreed it should be paid. It was intimated in the opinion that there was no forfeiture, and it was held that time was not of the essence of the contract.

I. The court below, on the trial of the case, following the above holding, determined that the plaintiffs

1. EMINENT domain: appropriation of right of way by railroad company: evidence.

were entitled to recover damages of the defendants for the full value of the right of way and grade, after deducting the five thousand dollars purchase money and interest thereon. This finding was upon the theory that the evidence shows that the defendants practically appropriated or destroyed the said right of way and grade for the whole distance between Belmond and Forest City. It appears to us that the correctness of this finding under the evidence is the only real question in the case.

So far as appears from the evidence, the Chicago, Iowa & Dakota Railway Company was endeavoring to construct a railroad from a place called "Eldora Junction" by way of Eldora to Alden, and from the latter place to Forest City by way of Belmond. It completed its line to Alden, and claims that it failed to continue on towards Forest City by reason of the tortious, malicious, and unlawful occupation of its line by the defendants. The defendants had completed their railroad from its main line at Vinton to and beyond Dows, in Wright county, and commenced the construction of a branch line from Dows up the valley of the Iowa river to Belmond. The plaintiff had made default in the payment of the purchase price for the right of way and grade from Belmond to Forest City. The defendants took an assignment of all the rights of the Iowa & Minnesota Railway Company, with a view to utilizing the grade and right of way in the construction of their line of road. The plaintiffs

claim that this was a great wrong; that it was "piracy," and this action was commenced.

It is shown quite clearly by the evidence that after the action was commenced the defendants abandoned the claim to the right of way, and built their line upon an independent survey and right of way. It is true their line crossed the old grade at some five places, and two of the crossings were made at such an acute angle as to be impracticable as a railroad crossing. The civil engineer under whose immediate supervision the line was constructed was called as a witness by the plaintiffs, and he testified as to these crossings as follows:

"The northern point to which defendant did construct its road is Madison Junction, six and one-half miles from Forest City. From there they run to Forest City on the Minneapolis & St. Louis Railway. The distance from Madison Junction to Dows is about forty-two miles, and it was completed in September or first of October. The road from Belmond to Garner runs practically north and south about eighteen miles. The defendant company, in building its line, built on a separate and distinct grade from the old Chicago, Iowa & Dakota road. In building that line from Garner to Belmond, defendant has crossed the old grade five times. The first crossing is practicable, and it is about three miles from Belmond. It is about four and one-half miles to the next crossing from Belmond. It is about three-fourths of a mile from the second crossing to the third. It is about nine miles from the third to the fourth crossing. From the fourth to the fifth it is about nine miles. There is a little more curvature in the old grade than in the new one. The old grade is a little the shortest. The new line adopted by defendant takes no part of the old grade except to cross. At some places they are on their right of way, parallel with them. They touch upon that right of way only for a distance of about three miles."

There is no evidence in conflict with the above as to the precise location of the defendants' road. By computing the distances, it will be seen that the five crossings are made in a distance of about twenty-three miles. The whole distance between the towns of Forest City and Belmond is about thirty-one miles. The evidence shows that the defendants' line, after making the last above-named crossing, does not follow near the old grade, but bears off to the west to a connection with the Minneapolis & St. Louis Railway, the track of which it uses from the junction to Forest City.

Upon this state of facts the plaintiffs contend that the crossing of the old grade was a practical adoption of that line, and that the plaintiffs were thereby prevented from completing their whole line by extending their road from Alden to Forest City; and it is claimed with apparent confidence that there is competent evidence in the case by which the fact is established that the whole line of the plaintiffs, including that which they have built, has been damaged and injured more than three hundred thousand dollars. This claim was not allowed by the court below, and cannot be entertained here. The claim is based upon the rule that where a railroad company, in the exercise of the right of eminent domain, under the authority of the state, appropriates part of a tract of land for right of way, the railroad company must compensate the owner, not only for the land actually taken, but for the depreciation in value of the whole tract. That rule has no application to such a state of facts as is presented in the record in this case, and in the numerous authorities cited by counsel to sustain the claim there is no case similar in its facts to the case at bar. It is unnecessary to further discuss the appeal taken by the plaintiffs. It is apparent, upon the plainest principles of equity and good conscience, that it should not be entertained.

II. The real question in the case is, did the court

below adopt the correct rule in determining the ques-

2. ——: ——:
damages.

tion of damages? We think the damages allowed were based upon an erroneous view of the rights of the plaintiffs as disclosed by the evidence. Both of the railroad companies desired to construct and operate a railroad in that territory. The defendant companies had the same right to build a line of road from Belmond north that the plaintiff companies had. The evidence shows beyond all question that if the defendants' line had not touched the old roadbed, but had been built near it, the old roadbed would have been of no value whatever, because no capitalists would have furnished the money to construct the second line. We think that when the competent evidence in the case is considered, and the incompetent evidence rejected, the plaintiffs would be entitled to damages for any advantage gained by the defendants in crossing the old line, and appropriating part of their right of way. It crossed the line five times, and at three of the crossings the angle was not so acute as to prevent a line from being constructed on the old road-bed, and operated with safety, and the evidence shows that the matter of crossings would not prevent or interfere with the building of a line the whole distance, and that it could be built without any special alteration of the defendants' line. There is no evidence that the mere crossing of the line prevented the plaintiffs from completing their road to Forest City. It is true it is claimed that this did defeat the plaintiffs' enterprise, but the evidence does not sustain the claim. It is based upon mere matter of opinion or conjecture, because it is conceded all through the case, in the evidence and arguments, that there was not sufficient business in that region to induce the construction of more than one line of road. One of the principal witnesses for the plaintiffs testified on that question as follows:

"Redirect: In referring to the fact that defendants

have made a new grade the bigger part of the way
between Belmond and Garner, occupying the old road-
bed only as shown and mentioned, what difference, if
any, is there in the value of that old roadbed, right of
way, etc., whether they run upon it, or a thousand feet
from it, for railroad purposes, practically?

"*Answer*. Well, there might be a difference in the
mechanical working in crossing, but, so far as doing
business is concerned, the difference would perhaps be
nothing, whether it ran along on the same grade or a
few feet from it. The damage would be the same, as far
as competition or diversion of the business is concerned;
but the necessity of crossing the road many times.
would increase the damage in that respect.

"Cross-examination:    *Question*. Then, as I under-
stand you, the building of the new road caused the
abandonment of the project of building on from Alden
to Forest City?

"*Answer*. Yes, sir; that is, the building by defend-
ants caused the abandoning by plaintiffs of building.

"*Question*. In other words, it was just the same, so
far as the financial damage is concerned, whether the
new company occupied the entire old grade or built on
a distinct and separate line,—the damage would have
been the same, financially?

"*Answer*. Financially, I so regard it. The business
of the territory would not justify two lines; and, if one
were built, it would render the other useless as a rail-
road, and that is what causes the damages I have
referred to."

We have said that the only legitimate damage
arises from the crossings made by the construction of
the defendants' road and the appropriation of the old
roadbed and right of way. It appears from the
evidence that we have quoted above that in making
these crossings the defendants' road touched the right
of way for the distance of about three miles. How

much in width of the right of way was taken does not appear, and what the actual damages would be to a company constructing a road on the old roadbed is not shown by any definite evidence. The plaintiffs base their claim on the fact that the acts of the defendants in crossing the old line prevented the plaintiffs from using it. This claim is not supported by the evidence. The fact appears that the plaintiff purchased the right of way and grade, and agreed to pay five thousand dollars therefor on the first day of June, 1883. It did not comply with its contract by making payment, but made default, and failed to make payment after a demand was made therefor in November, 1883, whereupon the Iowa & Minnesota Railway Company, in consideration of five thousand dollars and interest thereon, conveyed its interest therein to one of the defendants; and the plaintiffs have never at any time paid the five thousand dollars. It is true they tendered that amount to the defendants, and it was refused, but this was long after the amount was due, and a failure to pay upon demand. We cannot think that the plaintiff company was in a situation to proceed with the construction of its line, and was only prevented because the defendants crossed its line five times, when it was in such financial straits that it failed to pay five thousand dollars for thirty-one miles of graded road, which it is now claimed was actually worth three thousand, five hundred dollars a mile.

We are somewhat in doubt as to what disposition to make of the case. As we have said, the evidence as to the damage done to the old grade by the crossings of the defendants' road is indefinite. That it was some damage, there can be no doubt. But before the plaintiff can recover it must account for the five thousand dollars purchase money of the old grade, or, rather, that amount must be deducted from the damages. There is some evidence as to the value of

the grade estimated by the mile. We have concluded, in view of all the facts, including the fact that the crossings appropriated some of the old roadbed, that five thousand dollars would be fully equal to any damages sustained, and that the plaintiff has not shown itself entitled to any sum in excess of that amount. The decree of the district court is reversed, and the plaintiffs' petition dismissed. REVERSED.

KINNE, J., took no part in the decision of this case.